```
                                     AUSA:  James McMahon
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                  :  24 Mag. 3832
UNITED STATES OF AMERICA          :
                                  :  SEALED COMPLAINT
         - v. -                   :
                                  :  Violation of
HOSSAM AWADALLAH,                 :  18 U.S.C. § 1343
                                  :
              Defendant.          :
                                  :
- - - - - - - - - - - - - - - - - -x
```

SOUTHERN DISTRICT OF NEW YORK, ss.:

MICHAEL LEVER, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation, and charges as follows:

### COUNT ONE

From in or about 2019 through in or about June 2024, in the Southern District of New York and elsewhere, HOSSAM AWADALLAH, the defendant, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, willfully and knowingly, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds, to wit, AWADALLAH misled clients of his real estate training and advisory service with the materially false representation that he had been financially successful in the real estate business and thereafter failed to provide such training and advice.

(Title 18, United States Code, Section 1343)

The bases for my knowledge and the foregoing charge are, in part, as follows:

1

1.  I am a Special Agent with the Federal Bureau of Investigation and I have been personally involved in the investigation of this matter.  I have been a Special Agent with the FBI for nine years.  I have worked on cases involving white-collar fraud such as mail, wire, bank fraud and health care fraud.  This affidavit is based upon my conversations with witnesses and law enforcement agents and my examination of reports and records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

2.  I have spoken with a victim in this case ("Victim 1"), who told me the following in substance and in part:

    a.  Victim 1, then a resident of California, gave HOSSAM AWADALLAH, the defendant, then a resident of New York, $5,000 to mentor him in the real estate business on or about June 2, 2020.  Awadallah told Victim 1 he had been successful and was making a lot of money in the real estate business.  Awadallah drove a Lamborghini.  Victim 1 saw Awadallah's posts on Instagram about his success in closing real estate and other business deals.  Awadallah said that part of Victim 1's money would pay for advertising to generate leads of prospective buyers and sellers.  Awadallah promised to teach Victim 1 how to generate leads, how to market properties and how to negotiate purchases and sales of properties.  He also promised to help Victim 1 close at least five real estate transactions.

    b.  Victim 1 and Awadallah entered into a written agreement.  Awadallah initially gave Victim 1 a few leads of people who supposedly were interested in selling their properties.  Victim 1 followed up on the leads but none of the subjects of the leads was interested in selling their properties.  Victim 1 then sought guidance from Awadallah but did not receive any advice.  Thereafter, Victim 1 asked for his money back.  Awadallah repeated his promise to assist Victim 1 but never did so.  Instead, Awadallah ignored Victim 1's calls and texts within one month after he received Victim 1's money.

2

3. I have spoken with a victim in this case ("Victim 2") and her boyfriend, who told me the following in substance and in part:

    a. On or about July 28, 2020, Victim 2, then a resident of California, gave HOSSAM AWADALLAH, the defendant, $75,000 to help her start her own real estate business. Awadallah frequently bragged to Victim 2 and her boyfriend about how much money he had. In early 2021, he showed Victim 2's boyfriend his bank statement on his phone. At that time, Awadallah's balance was approximately $200,000.[1] He showed Victim 2 and her boyfriend two properties on which he said he had made money. He drove high-end rental cars, such as a Lamborghini, a BMW and a Mercedes. Victim 2 believed Awadallah was successful.

    b. Awadallah promised Victim 2 to help her with advertising, solicitation of potential buyers and sellers and with closing transactions. Awadallah claimed to know of potential buyers who had millions of dollars with which to buy properties.

    c. Victim 2 and Awadallah entered into a written agreement with a 30 day term. Awadallah gave Victim 2 and her boyfriend approximately two to three leads a week of people he claimed were looking to sell their homes, which leads he said he obtained through advertising. Victim 2 and her boyfriend followed up on the leads. The subjects of most of the leads had no interest in selling their properties. The subjects of two leads entered into sales contracts but neither transaction closed.

    d. One of the two sales contracts referenced above resulted in a lawsuit brought by Awadallah. Awadallah told Victim 2 that he would give her all the money resulting from the lawsuit. Awadallah has not sent Victim 2 any money from a settlement. In or about May and June 2023, Victim 2 texted

---

[1] As described in more detail below, Awadallah received $250,000 from another victim, Victim 4, in early January 2021 as an investment in a joint venture. This explains the balance in Awadallah's account at the time. Victim 2's boyfriend has said that Awadallah asked him and Victim 2 to tell Victim 4 that they were having positive experiences with Awadallah. Awadallah instructed them not to give Victim 4 any specific details about what Awadallah was doing for them.

Awadallah twice to ask about the status of the lawsuit. Awadallah did not respond to either text.

  e. According to Victim 2 and her boyfriend, Awadallah provided little guidance on marketing, solicitation of potential buyers or how to close transactions. Their communication with Awadallah was limited.

  f. In or about early 2021, Victim 2's boyfriend confronted Awadallah about the lack of guidance he had provided them. Awadallah claimed that Victim 2 and her boyfriend were not putting enough effort into their business and refused to refund their money.

 4. I have spoken with the defendant in the lawsuit brought by HOSSAM AWADALLAH, the defendant, referenced above. The defendant stated in substance and in part that he settled the lawsuit by making a payment of $45,000 in the fall of 2022.

 5. I have spoken with a victim in this case ("Victim 3"), who told me the following in substance and in part:

  a. In or about 2019, Victim 3, then a resident of New Jersey, saw HOSSAM AWADALLAH's, the defendant's, posts on Instagram about real estate deals Awadallah had done and how successful Awadallah had been in real estate. Victim 3 saw posts in which Awadallah claimed to have earned six figure commissions on real estate transactions and in which Awadallah posted screenshots of his bank account. Awadallah also posted photographs of himself driving expensive cars, wearing nice clothing and traveling. Awadallah also offered on Instagram his services as a mentor to those who wished to enter the real estate business online.

  b. Victim 3 commented on some of Awadallah's posts, which led to conversations with Awadallah about Awadallah's work in real estate. In or about 2019, Victim 3 and Awadallah met in person in New York City, during which time they continued their conversations about Awadallah's real estate career. Awadallah explained that he found individuals who wanted to sell their properties quickly and earned commissions by matching them with buyers. Awadallah said he found sellers by advertising online. At Awadallah's suggestion, he and Victim 3 together rented a

Lamborghini with which they took photographs and videos for social media posts intended to attract clients.

       c.  Shortly after this visit, Victim 3 gave Awadallah $5,000 to pay for mentoring services and for online advertisements to attract clients.  Awadallah and Victim 3 entered into a written agreement.  About one month thereafter, Awadallah began to ignore Victim 3's calls and text messages.  Victim 3 never received any mentoring assistance from Awadallah and never saw any advertisements or leads from such advertisements.

    6.  I have spoken with a victim in this case ("Victim 4") and Victim 4's parents, who told me the following in substance and in part:

       a.  Victim 4, then a resident of California, was HOSSAM AWADALLAH's, the defendant's, housemate in 2020.  Awadallah met with Victim 4 and his parents to propose that they invest in real estate with him.  Awadallah told Victim 4 and Victim 4's parents that he had been successful in wholesale real estate.  Awadallah promised Victim 4 and his parents a 40% return on their investment in one year.

       b.  Victim 4 and Awadallah formed Upin Real Estate in late December 2020 pursuant to an agreement between Exponential Growth Media, LLC, which was Awadallah's company, and Victim 4's company.  Awadallah, acting through Exponential Growth Media, was to provide the day-to-day management of Upin Real Estate.  The agreement obligated Awadallah to develop a marketing plan and provide Victim 4 with anywhere from 60 to 122 closed real estate transactions.  In or about January 2021, Victim 4 funded Upin Real Estate with $250,000 that he received from his parents, which was the vast majority of capital invested into the company.  This money was supposed to be used for marketing, getting leads and bringing buyers and sellers together.

       c.  Thereafter, according to Victim 4, Awadallah closed one real estate transaction on behalf of Upin.  Victim 4 received approximately $6,800 money from that transaction.  The parties dissolved Upin in or about April 2022.  Awadallah agreed to return Victim 4's $250,000 investment on a payment plan but has not made any payments.  Thereafter, Awadallah failed to

answer telephone calls and return messages from Victim 4 and his parents.

7. According to court records I have reviewed, Awadallah, acting through Exponential Growth Media, brought suit against Victim 4's company in April 2022 in the New York Supreme Court, Richmond County, seeking, among other things a video apology. That case is pending.

8. I have spoken with a victim in this case ("Victim 5"), who told me the following in substance and in part:

   a. Victim 5, then a resident of New Jersey, saw HOSSAM AWADALLAH's, the defendant's, Instagram account in or about 2020. Awadallah's posts contained several photos of him with expensive cars and stories of his success in real estate. Awadallah also offered mentorships in real estate for a fee through his Instagram account and posted stories of his mentees' successes in real estate.

   b. Victim 5 decided to seek mentorship from Awadallah because Awadallah's Instagram posts indicated he was successful. He initially contacted Awadallah through Instagram and continued their conversations by phone and email. Awadallah explained that he facilitated the cash purchase of properties from sellers who were looking to sell quickly. He claimed he had mentored others who were successful in real estate. Awadallah said he would help Victim 5 close a specified number of transactions. Victim 5 paid Awadallah $1,250 on or about January 17, 2020.

   c. Awadallah provided Victim 5 with a website on which to find potential sellers and a script to use when contacting sellers. Although he and Awadallah had a few phone calls, Victim 5 found Awadallah difficult to get in contact with, as Awadallah often did not return telephone calls or text messages.

9. Victim 4 gave me screenshots of HOSSAM AWADALLAH's, the defendant's, Instagram postings. The screenshots include photographs of Awadallah standing next to expensive cars and a photograph of what appears to be a real estate sales contract on which the words and number "Cash from buyer $76,087.26" can be seen.

6

10. I have reviewed the Linkedin profile for HOSSAM AWADALLAH, the defendant, in which he stated in relevant part:

> WHAT I DO: I help Real Estate Agents & Investors INEXPENSIVELY 10X their leads to close more deals.
>
> . . .
>
> WHO I WORK WITH: Primarily those in the Real Estate Realm (investors & agents), however my strategies also work for any coach, consultant or service provider.
>
> Want to learn how my client generated $12.5K within the first 25 days of working with me? Learn the same strategies that you too can use to acquire hundreds of highly qualified leads a month by booking a FREE strategy session at exponentialgrowthmedia.com/learn

11. I have also reviewed posts by HOSSAM AWADALLAH, the defendant, on the Clubhouse social network. Under "Bio," Awadallah posted:

> Background of what I can do for YOU and who I am:
>
> -Real Estate Investor helping you invest in sweet off market deals that you can't find on the MLS where you can submit offers without being bombarded with bidding wars.
>
> -Own a Marketing Agency (over $325,000.000 done in the last few months $250,000.00 in the month of January 2021 ALONE!)
>
> . . .
>
> Own a team of over 12 other sharks
>
> Nationwide/Global Real Estate investing

Awadallah also offered on his Clubhouse post:

> €10MM Real Estate available
>
> Details: Acquisition €7MM fully operating property in Italy. (€33MM in equity) looking for a JV partner that can fund for an equity percentage.

7

12. I have reviewed the tax return filed by HOSSAM AWADALLAH, the defendant, for 2018. He reported gross receipts from "other activities related to real estate" in the amount of $27,500. His only other reported income on his tax return for 2018 was wage income of $6,055. He filed no returns for the years 2020 and 2021.

13. I have reviewed and analyzed account records for every known bank account was held by HOSSAM AWADALLAH, the defendant, and any entity known to the Government to be under Awadallah's control that appear to have had a balance during the period from January 2018 through May 2022. My review of Awadallah's bank records shows that Awadallah and his entities received approximately $106,000 in apparent real-estate related gross receipts from attorneys, title companies or escrow companies during that 53 month period. During the same period, Awadallah and the entities he controlled received $336,250 from investors and mentees identified in this Complaint and approximately another $50,000 from other investors and mentees. Awadallah spent slightly more than $91,000 on advertising and other business-related expenses. Awadallah spent the vast majority of the rest of the money on items of an apparently personal nature, including more than $48,000 on luxury car rentals; more than $76,000 on travel and vacations; more than $11,000 on psychic readings; more than $10,000 on life coaching lessons; as well as food, entertainment, clothing and electronics.

14. It appears from Awadallah's bank records and tax records that Awadallah materially misled his potential mentees and potential investors when he told them he made a significant amount of money in real estate, including six figure commissions, and was therefore qualified to teach them the real estate business or manage a real estate business they had funded. It appears also that Awadallah failed to spend a material portion of his victims' money as promised but instead spent that material portion on personal expenditures.

WHEREFORE, deponent respectfully requests that HOSSAM AWADALLAH, the defendant, be arrested, and imprisoned or bailed as the case may be.

_____
MICHAEL LEVER
Special Agent
Federal Bureau of Investigation

Sworn to before me this
1st day of November, 2024

_____
HONORABLE ANDREW E. KRAUSE
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK